## BATES v. SIMPSON et al.

No. 7686.   Decided January 11, 1952.   (239 P. 2d 749.)

See 53 C. J. S., Licenses, sec. 36. Joint adventures. 30 Am. Jur., Joint adventures, sec. 3; 138 A. L. R. 968.

*McKay, Burton, McMillan & Richards*, Salt Lake City, for appellant.

*Davis & Bayles, Weston L. Bayles*, all of Salt Lake City, for respondent Haskell N. Bates.

*John S. Boyden, Allen H. Tibbals*, for respondent W. J. Saunders.

WOLFE, Chief Justice.

This is an action brought by plaintiff, purchaser of an automobile, against two automobile dealers and their surety, for damages suffered when the defendant, Jimmie Simpson, failed to procure title to the automobile for the plaintiff and disappeared without accounting for the proceeds of the transaction. The trial court awarded judgment in favor of plaintiff, Haskell N. Bates, and also cross-complainant W. J. Saunders against The Employers' Liability Assurance Corporation, Ltd., as surety upon the bond of Jimmie Simpson. The Bonding Company, by this appeal, seeks to establish Saunders as the responsible party for its loss as well as Simpson, and thereby indemnify itself against Saunders for the amounts paid.

The Bonding Company sold separate bonds to Jimmie Simpson and W. J. Saunders, both of whom are licensed and bonded used car dealers under the laws of the state of Utah. Saunders and Simpson did business from the same

used car lot at 999 South Main Street in Salt Lake City, Utah. Each paid his share of the rent; they shared the telephone, the furnishings and the building that was moved on to the property. A large sign stated, "Used Cars," with Saunders' name at one end and Simpson's at the other. They were not partners and there is no evidence that they shared profits or losses. They did not represent themselves as partners to the Bonding Company. Simpson financed his transactions with Capitol Finance Company; Saunders dealt with Strevell-Paterson Finance Company. Each dealer had his own cars to sell, and when one of them sold a car belonging to the other, the one whose car was sold paid the one who sold it a flat fee of $25, in contrast to sharing the profits.

On November 5, 1949, plaintiff Bates purchased from Jimmie Simpson a 1947 Chevrolet sedan for $1,395. Plaintiff turned in his old car with title for the down payment of $500. A "Used Car Order" was signed by Bates in which Jimmie Simpson's name appears as dealer. Bates also signed four copies of a "Purchase Agreement" in which the Seller-Dealer's name was left blank. This Chevrolet sedan had been purchased by Simpson from Brokaw-Bauer, an automobile company in Los Angeles, California. The title papers were to be forwarded to the Continental National Bank and Trust Company by Brokaw-Bauer and picked up, upon payment of the draft by Simpson. Simpson told Bates that title to the car would be retained by the finance company until all payments had been made. Simpson also stated that Bates could drive the car on the California license plates which it carried for three weeks, and that Simpson would take care of the transfer of the plates and the registration of the car.

At the time Bates purchased the Chevrolet, Simpson told Bates that he did not know where the car would be financed; that his partner and finance man, Bill Saunders, would handle the matter. Simpson was unable to finance the car through Capitol Finance Company and asked

Saunders to finance it for him, which Saunders did through Strevell-PatersonCompany. By financing the car Saunders could earn $70 in the form of a reserve, credited to his account with Strevell-Paterson Company. Saunders, therefore, took the conditional sales contract from Simpson, signed his name to it as "Seller-Dealer" and received $900.00 from Strevell-Paterson Company, the balance owed by Bates. Saunders cashed the Strevell-Paterson Company check and gave to Simpson his own check for $870.10. Simpson sold the 1941 Ford which had been turned in by Bates, and secured financing for this transaction presumably because he had title to this car. Bates, thereafter, tried to get Simpson to get Utah license plates for the car, but Simpson always gave some excuse and postponed Bates upon this matter. Simpson was last seen by Bates on December 17, 1949 and by Saunders January 7, 1950. He cashed Saunders' check and disappeared without paying the draft or securing title from the bank.

The bank returned the title and registration papers to Brokaw-Bauer in California. Bates still believing that Strevell-Paterson Company had title, made three payments of $66.00 each to the Finance Company. Some time later Brokaw-Bauer of California brought an action in replevin against Bates, by which proceeding they regained possession of the automobile. Bates gave notice of such action to Saunders and to the Bonding Company and requested each to defend the suit. Upon their refusal, it became necessary for Bates to incur the reasonable sum of $205.62 to hire an attorney and for other costs in attempting to protect the Chevrolet against the replevin action.

Bates then brought the present action. The case was tried without a jury and without being able to obtain service of summons upon Simpson. The court entered judgment for Bates for the value of the care he turned in ($500) plus attorney's fees and costs in defending the Brokaw-Bauer action ($205.62), together with the amount paid by him to Strevell-Paterson Company on the contract ($198)

and the sum of $29.90 paid by Bates in cash to Simpson at the time of the sale to cover the sales tax and fee for the license plates, a total of $933.52.

After the car had been replevied by Brokaw-Bauer, Saunders authorized deductions to be made from his reserves accumulated with Strevell-Paterson Company in order to pay off the loan given to, and guaranteed by him. These deductions, according to the Saunders-Strevell-Paterson Company agreement, amounted to $867.75 and judgment was ordered against the Bonding Company and in favor of Saunders for this amount. However, it is uncontradicted that Saunders retained $29.90 out of the amount which he received from Strevell-Paterson Company and turned over to Simpson, this being the sum which Bates paid Simpson in cash to cover the taxes and license plates. The Bonding Company paid this amount to Bates as part of his damages and therefore should not be required to pay the identical amount as part of Saunders' damages.

It is conceded by the appellant that the judgment in favor of Bates upon the bond of Simpson is correct. This award is affirmed. But appellant contends that the sale to Bates was a joint adventure, participated in by both Simpson and Saunders and therefore the judgment in favor of Saunders upon the bond of Simpson cannot be sustained, and further that Bates should be entitled to recover against the bond of Saunders so that appellant is entitled to indemnification for its loss against Saunders. We have frequently announced in this court that "joint adventure is in the nature of partnership," *Wasatch Livestock Loan Co.* v. *Lewis & Sharp*, 84 Utah 347, 35 P. 2d 835; *Kaumans* v. *White Star Gas & Oil Co.*, 92 Utah 24, 63 P. 2d 231. To establish a joint adventure there must be an agreement, express or implied, for the sharing of profits, 30 Am. Jur. p. 682. The relationship in this case is not one of joint adventure by virtue of the fact that Saunders realized a profit in the form of accumulated reserves with

Strevell-Paterson Company. Profits gained by Simpson from the sale of the car and reserves earned by Saunders for financing the transaction are two different things. Sharing the lot, the building and the telephone does not constitute this working arrangement between the two dealers a joint adventure. Saunders cannot be estopped from asserting that he was neither a partner nor a joint adventurer of Simpson's. Bates testified that Simpson referred to Saunders as his partner and finance man, but there is no evidence to show that Bates relied in any manner on such representation, or that Saunders ever consented to his being referred to as a partner. Thus, there is no partnership by estoppel as defined in the Uniform Partnership Act, 69-1-13, U. C. A. 1943. A joint adventure by estoppel likewise fails for lack of reliance by Bates, or consent to being held out as a joint adventure by Saunders. There is no legal theory upon which Simpson's fraudulent acts can be imputed to Saunders. Bates at all times considered Simpson as the seller. The fact that Saunders filled his name in the blank space on the title-retaining contract, reserved for the signature of the "Seller-Dealer" does not change his status as a financial link in the transaction to that of the actual seller of the automobile. Neither Bates nor Simpson expected Saunders to assume the responsibility of securing the title for Bates, because of the fact that Saunders signed his name to the blank contract in order to finance the deal.

It is urged that Saunders knowingly violated the provisions of our motor vehicle code relating to automobile dealers and is thus precluded from recovering upon Simpson's bond as well as being liable to Bates. In brief, section 57-6-4, U. C. A. 1943, provides that every person who brings a second-hand car into the state shall register the car with the state tax commission and also execute a bond to indemnify any vendee for loss sustained as a result of failure of title or fraudulent misrepresentations. Section 57-6-5 provides that every person upon the

sale and delivery of a second-hand car shall within 48 hours, deliver to the vendee a certificate of title issued by the state tax commission. The terms "dealer" and "vendor" aforementioned are defined as every individual, partnership, corporation or trust whose business is that of selling new or used cars, 57-6-7, U. C. A. 1943. Under the facts and circumstances of this case, we hold that Saunders was not the dealer or vendor within the meaning of the statutes outlining the duties of such person. He was a financier of the transaction. His signature on the contract signifies that he was an indorser of commercial paper,—not the seller of the automobile. Both Saunders and Bates relied on Simpson to procure the necessary title. For Simpson's default, the appellant Bonding Company is liable to Bates and Saunders.

The cause is remanded to the District Court with directions to modify the judgment in favor of Saunders by reducing it in the sum of $29.90 and as so modified the judgment is affirmed. Costs awarded to respondents Bates and Saunders.

WADE, McDONOUGH, CROCKETT and HENRIOD, JJ., concur.